# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

LUIS GIOVANNI
SANTIAGO-MARTINEZ,

        Plaintiff,

v.                                                                   Case No. 6:20-cv-402-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.
_____

## **OPINION AND ORDER**[2]

### **I. Status**

Luis Giovanni Santiago-Martinez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of multiple fractures, broken bones, limited mobility, depression, diabetes, anxiety/nerves, and gun shot wounds. See

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 31), filed June 23, 2021; Reference Order (Doc. No. 32), entered June 23, 2021.

Transcript of Administrative Proceedings (Doc. No. 21; "Tr." or "administrative transcript"), filed September 9, 2020, at 57-58, 73, 205. Plaintiff filed an application for DIB on November 22, 2016,[3] alleging a disability onset date of September 9, 2016. Tr. at 176-79. The application was denied initially, Tr. at 57-71, 72, 91-95, 96, and upon reconsideration, Tr. at 73-89, 90, 101, 102-08.

On January 3, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] See Tr. at 39-56. Plaintiff was forty years old at the time of the hearing. Tr. at 44. On March 27, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 21-33.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5. On January 3, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 6, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[3] Although actually completed on November 22, 2016, see Tr. at 177, the protective filing date of the application is listed elsewhere in the administrative transcript as September 29, 2016, see, e.g., Tr. at 57, 73.

[4] Plaintiff primarily speaks Spanish, so he testified at the hearing through an interpreter. See Tr. at 39, 41-42.

On appeal, Plaintiff argues the ALJ: 1) "fail[ed] to properly weigh and consider the opinions of treating physicians, examining physicians, and non-examining physicians"[5]; 2) improperly "relied on the testimony of the [VE] after posing and relying on a hypothetical question that did not adequately reflect [Plaintiff's] limitations"; and 3) erroneously found Plaintiff's "testimony was not consistent with the record when the record clearly reveals that [] Plaintiff suffered from documented impairments causing significant limitations." Memorandum in Support of Plaintiff's Position (Doc. No. 27; "Pl.'s Mem."), filed January 8, 2021, at 9, 16, 19. On March 16, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 30; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the medical opinions and Plaintiff's testimony regarding the effects of his impairments. On remand, this reevaluation may impact the residual functional capacity ("RFC") and hypothetical presented to the VE, so these matters may need to be reevaluated as well.

---

[5] Although the issue is generally framed to include examining physicians, as explained below, Plaintiff does not specifically challenge the ALJ's handling of any examining physicians' opinions.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 23-33. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since September 9, 2016, the alleged onset date." Tr. at 23 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

the following severe impairments: obesity; multiple gunshot wounds to the right side of the body resulting in right ear Eustachian tube dysfunction with hearing loss, right mandibular and radius fractures, small fracture of the right maxillary sinus wall, subluxation of the temporomandibular joint, tinnitus, and trigeminal neuralgia; diabetes mellitus; peripheral neuropathy; depressive disorder; posttraumatic stress disorder (PTSD) and anxiety disorder." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; could push/pull as much as can lift/carry; frequent reaching including overhead reaching with the right upper extremity; could do frequent kneeling, stooping, crawling, crouching and occasional climbing of ramps and stairs, but should never climb ladders, ropes or scaffolds. Environmentally, [Plaintiff] should not be exposed to unprotected heights, and should not operate a motor vehicle. Mentally, [Plaintiff] is limited to simple tasks and could make simple work-related decisions; could interact with co-workers/supervisors frequently and only occasional interaction with the public.

Tr. at 26 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work" as a "driver, sales route" and a "dump truck driver." Tr. at 31 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("38 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 32 (emphasis and citation omitted), such as "Router," "Checker I," and "Marker," Tr. at 33. The ALJ concluded Plaintiff "has not been under a disability . . . from September 9, 2016, through the date of th[e D]ecision." Tr. at 33 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial

evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

### A.   Parties' Arguments

Plaintiff contends first that the ALJ erred in evaluating the medical opinions of record. Pl.'s Mem. at 9-16. In support, Plaintiff points out that the ALJ entirely failed to weigh three different medical opinions: Fernando Gonzales-Portillo, M.D., a treating neurologist, see Tr. at 311-30, 383, 404, 434-38, 544-52; Luis G. Izquierdo, M.D., a treating physician for hearing loss and vertigo, see Tr. at 372-78; and Manuel Lugo, P.A., a physician's assistant treating Plaintiff for facial paralysis and weakness of the right side of the body,

Tr. at 380-82, 401-03, 431-33. Pl.'s Mem. at 9-15.[7] Plaintiff further contends the ALJ assigned "partial weight" to the opinion of Joseph Chiaro, M.D., a non-examining state agency physician, see Tr. at 82-85, based on erroneous reasons. Pl.'s Mem. at 16.

Responding to the arguments about the medical opinions, Defendant concedes the ALJ failed to "specifically weigh the opinions" of Dr. Gonzales-Portillo and Dr. Izquierdo. Def.'s Mem. at 10. Defendant does not address Plaintiff's contention about Mr. Lugo's opinion. See id. But, Defendant concedes yet another opinion was not addressed by the ALJ: that of Jerry David Ramos, M.D., a treating primary care physician, see Tr. at 295-305. Def.'s Mem. at 10. Nonetheless, Defendant argues the ALJ's "RFC determination for light work is generally supported by objective findings of record." Id. (citation omitted).

Second, Plaintiff contends the ALJ erred in posing a hypothetical to the VE that did not adequately reflect his limitations. Pl.'s Mem. at 16-19. But, Plaintiff's argument in this regard is entirely premised on his arguments regarding the medical opinions. See id. at 18-19.

Third, Plaintiff asserts the ALJ improperly rejected his testimony "when the record clearly reveals that [] Plaintiff suffered from documented

---

[7] Plaintiff characterizes Mr. Lugo as a "Dr." but medical records reflect he is a "PA."

- 8 -

impairments causing significant limitations." Id. at 19. In making this assertion, Plaintiff contends the ALJ offered no more than "boiler plate type language commonly found in Social Security decisions." Id. at 20 (citation omitted). Responding, Defendant argues that the ALJ considered and evaluated the appropriate factors. Def.'s Mem. at 12-13.

**B. Applicable Law**

   **1. Medical Opinions**[8]

"Medical opinions are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists,

---

[8] On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed his claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed.

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[9]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin.,

---

[9] For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[10] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length

---

[10] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1527(a)(2).

of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Simon, 7 F.4th at 1104 (citation omitted); Walker, 987 F.3d at 1338 (citation omitted); Schink, 935 F.3d at 1259; Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Walker, 987 F.3d at 1338; Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v.

Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain the weight it has given to obviously probative exhibits." Simon, 7 F.4h at 1105 (quotation and citations omitted).

Opinions from sources "who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3.[11] The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows [the] claimant or subsequent reviewer to follow the [ALJ's]

---

[11] SSR 06-03p was rescinded on March 27, 2017, but this rescission applies only to claims filed on or after March 27, 2017. SSR 96-2P, 2017 WL 3928305, *1 (stating the "rescission will be effective for claims filed on or after March 27, 2017"); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263-01, 15,263 (Mar. 27, 2017) (same). SSR 06-03p therefore applies to Plaintiff's claim.

reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6; 20 C.F.R. § 404.1527(f)(2).

### 2. Testimony Regarding Effects of Pain and Other Symptoms

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating the claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ.

Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### 3. RFC and Hypothetical to a VE

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). When

the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Brunson v. Astrue, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting Corbitt v. Astrue, No. 3:07-cv-518-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished)).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination" (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984))). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

**C.  Analysis**

With respect to the medical opinions of record, the ALJ did generally summarize the medical evidence, including some of the notes from the medical sources at issue.  See Tr. at 27-28.  But, when addressing "opinion evidence," Tr. at 29, the ALJ failed to assign weight to three treating physicians' opinions (Dr. Fernando Gonzales-Portillo, Dr. Izquierdo, and Dr. Ramos) and a treating

- 16 -

physician's assistant (Mr. Lugo). This error necessitates remand. See, e.g., Winschel, 631 F.3d at 1179 (citation omitted) (stating that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor"); Simon, 7 F.4th at 1105 ("It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain the weight it has given to obviously probative exhibits.").

Moreover, in assigning "some weight" to Dr. Chiaro's opinion, the ALJ recognized that as a non-examining state-agency opinion, it "does not as a general matter deserve as much weight as those of examining or treating physicians," Tr. at 30, but it is difficult to determine whether the ALJ actually applied that rule because she did not assign weight to any of the treating physicians' opinions. Also, the ALJ relied to a degree on Plaintiff "barely mention[ing] the right arm at the hearing" as support for rejecting Dr. Chiaro's limitation of "occasional use of the right arm," Tr. at 30, but Plaintiff's testimony about his right arm actually supported such a limitation. At the hearing, Plaintiff was asked, "what physical problems do you have that you feel would prevent you from working?" Tr. at 50. Plaintiff responded in part to that question by asserting, "From the 10 [gun]shots that I received, my right arm doesn't function the same. I don't have the same agility. I don't have the same strength in my right arm." Tr. at 50. The ALJ on remand shall also reconsider Dr. Chiaro's opinion.

As to Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." Tr. at 26. The ALJ summarized Plaintiff's testimony and, contrary to Plaintiff's contention, the Decision reflects consideration of at least some of the relevant factors. See Tr. at 30-31 (finding, e.g., that Plaintiff "testified to a relatively wide range of activities of daily living"). However, in light of the ALJ needing to reevaluate the medical evidence, "the ALJ will need to reassess [Plaintiff's] testimony as well" on remand. Simon, 7 F.4th at 1109. "If, after giving each medical opinion in the record appropriate weight, the ALJ is still inclined to disbelieve [Plaintiff's] statements as to the severity of his symptoms, then the ALJ must support that finding by identifying some specific portion of the record undermining" the testimony. Id. at 1109-10.

Finally, in light of the other instructions on remand, it may be necessary for the ALJ to reevaluate the RFC and hypothetical to the VE.

## V.   Conclusion

Based on the foregoing, it is

**ORDERED**:

Case 6:20-cv-00402-JRK   Document 34   Filed 09/08/21   Page 19 of 20 PageID 697

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the medical opinions; specify the weight assigned to each opinion; and articulate the reasons for the weight given to them;

   (B) Reevaluate Plaintiff's subjective complaints, and if the complaints are rejected, identify a specific portion of the record undermining the complaints;

   (C) If appropriate, reevaluate the RFC and hypothetical to the VE; and

   (D) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 8, 2021.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record